UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL ACTION NO. 08-10050-GAO

UNITED STATES OF AMERICA

v.

TIMOTHY BROWN,
Defendant.

OPINION AND ORDER
March 19, 2015

O'TOOLE, D.J.

On February 5, 2009, Timothy Brown was convicted by a jury of possession of at least five grams of cocaine base with the intent to distribute in violation of 21 U.S.C. § 841(a)(1). Brown received a 180 month sentence of incarceration. His conviction was affirmed by the First Circuit, and the Supreme Court denied certiorari. United States v. Brown, 621 F.3d 48 (1st Cir. 2010); Brown v. United States, 131 S.Ct 2126 (2011).

On November 3, 2011, Brown filed a *pro se* motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2) based on a post-sentence adjustment made by the United States Sentencing Commission to the principal drug crime guideline, U.S.S.G. § 2D1.1. Eventually counsel was appointed and the issue has been thoroughly and carefully briefed.

On April 18, 2012, exactly one year from the date of the Supreme Court's denial of his petition for certiorari, Brown mailed to the Clerk of this Court a *pro se* motion to vacate his sentence under 28 U.S.C. § 2255. The motion asserted three grounds for the requested relief: (1) ineffective assistance of counsel in failing "to advise the petitioner as to whether the petitioner should accept or reject a plea offer by the government," (2) ineffective assistance that "deprived

the petitioner of an otherwise available, substantial ground of defence" [sic], and (3) ineffective assistance in failing "to challenge the seizing officer search of vehicle stop before trial." (Mot. to Vacate at 6-9 (dkt. no. 96).) Brown submitted a brief *pro se* memorandum with the motion.

On August 5, 2013, Brown mailed to the Court a motion for leave to supplement his pending § 2255 motion by adding a claim based on irregularities that occurred in the Massachusetts state drug laboratory that had weighed and tested the drugs used in evidence against him at his trial. On August 30, 2013, retained counsel on Brown's behalf filed a further motion under § 2255 to set aside his guilty verdict or reduce his sentence, again based on the state drug laboratory issue. Eventually, both Brown (through counsel) and the government briefed that issue.

This order resolves the various pending issues.

## I. Motion to Reduce Sentence

Brown was sentenced to 180 months imprisonment on May 26, 2009. On November 1, 2011, the United States Sentencing Commission promulgated Amendment 750, which decreased the recommended sentencing range for the crack cocaine guidelines in § 2D1.1. Brown argues that his sentence should be reduced in light of Amendment 750's retroactive effect.

A court may reduce a defendant's sentence where it is "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c)(2). Amendment 750 changed the guideline range applicable to crack cocaine offenses calculated under § 2D1.1. Brown was convicted of possession of at least five grams of cocaine base with the intent to distribute it. Under the Sentencing Guidelines in effect at the time of his sentencing, the base offense level for this crime was 24. Calculated solely on the basis of the criminal history points assigned pursuant to Chapter 4 of the Guidelines, his criminal history category would

have been VI, and the recommended sentencing range pursuant to the table would have been 100 to 125 months. Brown, however, qualified as a career offender under § 4B1.1, and his offense level was thus established at 34, instead of 24, increasing the advisory sentencing range to 262 to 327 months.

Brown's sentence of 180 months lay between the lower range calculated according to the nature and quantity of the drug involved under §2D1.1 and the higher range calculated according to the career offender guideline. While I imposed a sentence below the career offender range, I did not base the sentence on the nature and quantity of the drug involved under § 2D1.1. Accordingly, his sentence was not "based on" § 2D1.1, and § 3582(c) does not authorize a reduction because of a later amendment to that guideline. United States v. Caraballo, 552 F.3d 6, 10 (1st Cir. 2008) ("[I]f an amended guideline does not have the effect of lowering the sentencing range actually used at the sentencing, the defendant's sentence was not based on that range within the intendment of the statute.").

Under United States v. Cardosa, 606 F.3d 16 (1st Cir. 2010), a career offender may nevertheless be entitled to the benefit of amendments to the crack cocaine guidelines where a court deviates from the career offender guidelines and instead relies on another guideline. Id. at 20. The Cardosa exception is inapplicable here. At the sentencing hearing defense counsel argued for a sentence within the range calculated under § 2D1.1, but I explained that career offender considerations were more important than the considerations addressed by that guideline provision:

> And so the career offender, because it's driven not only be the facts of the case and the nature of the offenses, including quantities, but by the criminal history of the defendant as opposed to quantities, calls for a different assessment.

(Sentencing Tr. at 13 (dkt. no. 84).) While the sentence I imposed fell below the recommended career offender range, the defendant's criminal history was "a prominent factor" in his sentence.

3

(Id. at 14.) In fact, to emphasize the importance of Brown's criminal history in my sentencing judgment, I observed that "[e]ven apart from the technical use of the term 'career offender' as we take it from the [G]uidelines, in [the] ordinary use of the English language Mr. Brown is a career offender." (Id.)

Because his sentence was not "based on" the amended guideline provision, Brown's motion under § 3582(c) is DENIED.

## II. April 18, 2012 Motion to Vacate

In his original § 2255 motion, Brown relied on claims of ineffective assistance of counsel. Brown's first two arguments are that his counsel was ineffective by failing to advise him whether to accept a plea offer by the government and by depriving Brown of an otherwise available, substantial ground of defense. Both claims are summarily stated, and neither is supported by any factual assertions. Without specific factual support, Brown's motion under § 2255 may be denied on that basis. Lema v. United States, 987 F.2d 48, 51 (1st Cir. 1993); Dure v. United States, 127 F. Supp. 2d 276, 279 (D.R.I. 2001) ("Conclusory allegations or factual assertions that are unsupported, fanciful or contradicted by the record, are insufficient."). The lack of factual support is not remedied by any later filing by counsel.

Brown's third argument is that his attorney provided ineffective assistance by failing to challenge the stop and search of the vehicle. This claim is simply untrue. Defense counsel did challenge the vehicle stop in a motion to suppress and on appeal. United States v. Brown, No. 08-cr-10050-GAO, 2008 WL 4936517 (D. Mass. Nov. 17, 2008); Brown, 621 F.3d 48.

The April 2012 version of his § 2255 motion is subject to summary dismissal. Lema, 987 F.2d at 81.

### III. August 2013 Motions

#### A. Motion for a New Trial

The drugs Brown was convicted of illegally possessing were sent to the Massachusetts Hinton State Laboratory for testing. The testing was done by state chemist Annie Dookhan. After analyzing a representative sample of nineteen bags, Dookhan determined that the bags contained 16.20 grams of cocaine on April 12, 2007. (Certificates, Ex. 8 at 1-2 (dkt. no. 116-4).) In 2008, Dookhan conducted further testing and determined that the substance in the bags was crack cocaine. (Id. at 3-4.) An expert for the defense reweighed the substance in the bags, and the parties later stipulated that they contained a total of 15.693 grams of crack cocaine. (Stipulation at 1 (dkt. no. 39).)

In July 2012, laboratory misconduct was discovered at the Hinton State Laboratory, and Dookhan later admitted to failing to conduct the requisite drug analysis tests, tampering with drug samples, and falsely attesting to lab results. Office of the Inspector Gen., Investigation of the Drug Laboratory at the William A. Hinton State Laboratory Institute 2002-2012 5-7 (2014). In August 2013, Brown and later his retained counsel filed supplemental motions raising the Dookhan misconduct as a further ground for vacating his conviction and sentence. He also argues that the government violated Brady v. Maryland, 373 U.S. 83 (1963), by failing to disclose Dookhan's misconduct. Because counsel's motion followed Brown's earlier *pro se* supplemental motion, I treat the latter as the operative pleading on the matter.

A defendant who requests a new trial on the basis of newly discovered evidence must demonstrate that

> (1) the evidence was unknown or unavailable to the defendant at the time of trial; (2) failure to learn of the evidence was not due to lack of diligence by the defendant; (3) the evidence is material and not merely cumulative or impeaching; and (4) the emergence of the evidence will probably result in an acquittal upon retrial of the defendant.

United States v. Del-Valle, 566 F.3d 31, 38 (1st. Cir. 2009). Brown's motion cannot succeed because he cannot demonstrate that there is an "actual probability" that evidence of Dookhan's misconduct would have resulted in an acquittal after retrial. Id.

Brown argues that evidence of laboratory misconduct would have led the jury to question "the prosecution's ability to marshal its proof against the defendant." (Def.'s Supplemental Mem. at 9 (dkt. no. 112).) But Brown fails to explain how Dookhan's alleged misconduct discredits the substantial circumstantial evidence suggesting that Brown was in possession of crack cocaine. Such evidence included the officers' visual recognition of the substance in the fifty-six packages, Brown's suspicious activities in the police cruiser, and physical evidence indicative of drug dealing, such as the large quantity of cash in small bills, the bag of marijuana, and multiple cell phones found in the car and on Brown's person.

Additionally, Brown never contested that the substance was crack cocaine. Brown asserts that, because his primary argument during trial was that the bags did not belong to him, he never had an opportunity to dispute the identity of their contents and would have done so had he been aware of Dookhan's activities. However, he did more than just refrain from disputing that the bags contained crack cocaine; he *stipulated* that they did contain crack cocaine. And, as the record demonstrates, Brown had an expert review Dookhan's attested drug weight, and based on the defense expert's testing, the parties stipulated to a smaller weight of crack cocaine.

Moreover, the mere fact that Dookhan was involved in Brown's case does not justify a new trial. As other cases involving Dookhan demonstrate, some additional showing is necessary. See Wilkins v. United States, 754 F.3d 24, 29 (1st Cir. 2014) (finding that the petitioner's argument that Dookhan's involvement in his case "ought to shake our confidence in his guilty plea . . . elevates hope over reason"); United States v. Smith, No. 09-cr-10006-RGS, 2013 WL

6798931, at *3 (D. Mass. Dec. 20, 2013) (denying petition under 18 U.S.C. § 2255 because the evidence against the petitioner was "overwhelming" despite Dookhan's involvement in the case). Without showing that there is an actual probability that evidence of Dookhan's misconduct would have resulted in acquittal, Brown's petition cannot succeed.

### B. Brady v. Maryland Claim

Brown next argues that the government's failure to disclose Dookhan's misconduct violated his due process rights under Brady v. Maryland, 373 U.S. 83 (1963). To prevail on this argument, the defendant must demonstrate that:

> (1) the evidence at issue is material and favorable to the accused; (2) the evidence was suppressed by the prosecution; and (3) the defendant was prejudiced by the suppression in that there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.

Del-Valle, 566 F.3d at 40. The government argues that it had no duty to disclose evidence of a state laboratory worker's misconduct because this information was not in its "possession, custody, or control." United States v. Hall, 434 F.3d 42, 55 (1st Cir. 2006); United States v. Bender, 304 F.3d 161, 164 (1st Cir. 2002) (finding that the prosecution's Brady duty only extends to members of the government team).

The First Circuit has expressly reserved the question whether federal prosecutors are to be held responsible for Dookhan's surreptitious misconduct. Wilkins, 754 F.3d at 28. It is unnecessary to resolve it here because, even if the government might be responsible for a Brady default, it is still the case that, for the reasons just noted above, Brown cannot demonstrate that there is a reasonable probability that, had he been aware of Dookhan's misconduct, his trial would have ended differently. For one thing, if the misconduct had been discovered before trial, the most probable outcome would have been retesting by another, presumably trustworthy, agency. As the government points out, subsequent testing of drug packages attributed to the

7

defendant that Dookhan did not test showed that the packages did indeed contain crack cocaine. (Certificate of Drug Analysis, Ex. 7 at 17-20 (dkt. no. 116-3).) In addition, the government presented other substantial evidence supporting the conclusion that Brown possessed crack cocaine with the intent to distribute it. The plain fact of Dookhan's involvement in this case, without more, cannot support Brown's Brady claim. See United States v. Olsen, 704 F.3d 1172, 1186-87 (9th Cir. 2013) (rejecting Brady argument where state forensic scientist was accused of laboratory misconduct due to weight of other available evidence).

## IV. Conclusion

For the reasons set forth herein, the petitioner's Motions to Vacate pursuant to 28 U.S.C. § 2255 (dkt. nos. 96 & 103) and Motion to Reduce Sentence (dkt. no. 87) are all DENIED.

It is SO ORDERED.

## V. Certificate of Appealability

A certificate of appealability will issue if the petitioner "has made a substantial showing of the denial of a constitutional right." See 28 U.S.C. § 2253(c)(2). This petitioner has not made such a showing. Accordingly, a certificate of appealability will not issue.

/s/ George A. O'Toole, Jr.
United States District Judge